# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 1:09-cr-00159 |
| v. : | |
| : | (Chief Judge Kane) |
| ORSON ADAMS, : | |
|    Defendant : | |

## MEMORANDUM

Before the Court is Defendant Orson Adams's motion to suppress evidence. (Doc. No. 112.) Defendant moves to suppress drug evidence found in his bag, located in the trunk of a car, during a warrantless search of an automobile in which he was a passenger. For the reasons that follow, the motion will be denied.

## I. BACKGROUND[1]

On April 14, 2009, a confidential informant working with the DEA ("the Informant") rented a 2009 blueish gray Chevy Impala with Florida license plate number 757LHI. (Doc. No. 121 at 2.) DEA agents marked the Impala with a GPS tracking device because they intended to have it used for a drug trafficking investigation. (Trans. 25.)

In the evening hours of May 5, 2009, the Informant loaned the marked Impala to Rahseem Drummond.[2] (Trans. 25, 27.) Drummond, Channel Thomas,[3] and Defendant Orson

---

[1] The following factual account represents the facts the Court credits upon consideration of all testimony and evidence presented during the evidentiary hearing held September 3, 2009. The parties stipulated to the events occurring prior to Defendant's arrest. The events occurring after the Impala was detained, however, are disputed. For the reasons stated hereinafter, the Court need not delve into the disputed facts that occurred after the traffic stop to give the Government probable cause to search the vehicle because probable cause to stop and search the vehicle existed prior to the stop.

[2] Rahseem Drummond is a co-defendant in this criminal proceeding.

[3] Channel Thomas is also a co-defendant in this criminal proceeding.

Adams ("Defendant") traveled in the Impala to St. Thomas, Pennsylvania, a city west of Chambersburg, where they stopped at a hotel previously identified by the Informant as a "stash location" for marijuana and crack cocaine. (Trans. 26.) Drummond then left the hotel in Thomas' vehicle, relinquishing possession of the Impala to Thomas and Defendant Adams with the expectation that they would use the vehicle to transport drugs from the New York or New Jersey area. (Trans. 51.)

On May 6, 2009, Defendant and Thomas drove the Chevy Impala to a supplier in New Jersey where they purchased four ounces of crack cocaine and five pounds of marijuana. (Trans. 29.) Prior to returning to Pennsylvania, they contacted Drummond to inform him that the drugs had been procured and that they were preparing to return. (Trans. 19.) Drummond then relayed that information to the Informant, who told DEA Agent Keith Kierzkowski ("Agent Kierzkowski") by cell phone. (Trans. 19, 23, 30, 33.) When Agent Kierzkowski received this information, he was able to verify the truth of the tip by noting the movement of the GPS tracker on his laptop. The tracker had been indicating that the Impala was at a location in New Jersey, but began indicating that the vehicle was returning to Pennsylvania as indicated by the tip. (Trans. 29.) Agent Kierzkowski had also confirmed the accuracy of the Informant's tips by having the Informant make a successful controlled purchase of marijuana from Drummond while Defendant and Thomas were in New Jersey. (Trans. 28.) The controlled purchase was conducted at the same St. Thomas hotel the parties had visited earlier that day. (Trans. 28.)

A few hours later, the Informant received another call from Drummond indicating that the drugs in the Impala would be in Chambersburg in approximately one hour. (Trans. 55.) The

Informant again relayed the information to Agent Kierzkowski, who was able to verify that information through the GPS data. (Trans. 55.)

Convinced that the Informant's tips were accurate and that the vehicle contained drugs, Agent Kierzkowski ordered Trooper Anthony Todaro ("Trooper Todaro"), a Commonwealth of Pennsylvania Police Trooper cooperating with the federal investigation, to stop the Impala. (Trans. 55, 62.) Trooper Todaro located the vehicle driving southbound on Interstate 81 and made a traffic stop. (Trans. 65-67.) Because the vehicle was traveling at a speed of 72 miles per hour in a 65 mile per hour speed zone and had been "drifting off onto the berm" of the highway, Trooper Todaro stopped the vehicle under the pretense of a traffic violation rather than on the basis of probable cause to suspect the vehicle contained drugs.[4] (Trans. 67.) Though neither Thomas nor Defendant gave consent, the vehicle was searched. (Trans. 67.) Two pounds of marijuana were found in a duffle bag in the trunk. (Trans. 67.) The duffle bag had a luggage tag denoting that it was the property of Defendant. (Trans. 67-68.)

In this motion, Defendant seeks to suppress the drugs found in his duffle bag on the basis that Trooper Todaro lacked probable cause to search the car and his bag. The Government argues that, based on the Informant's tips, probable cause existed to make the stop and to search the vehicle for drugs.

---

[4]At the evidentiary hearing, Agent Kierzkowski explained that he made a strategic decision to have the vehicle stopped and searched pursuant to a traffic violation rather than the pre-existing probable cause so as not to compromise the identity of the Informant. The Court refrains from factual determinations of the events occurring after the traffic stop because, as will be explained in the next section, it easily concludes that, based on the tips of a reliable informant, the Government had probable cause to search the Impala.

## II. DISCUSSION

Defendant argues that Trooper Todaro could not have had probable cause to search the car based on information gathered during the traffic stop. Yet, the Government does not rely on facts gathered during the traffic stop to support its position that probable cause existed for the stop. Instead, the Government asserts that Trooper Todaro had probable cause to search the vehicle at the time of the stop due to information provided to Agent Kierzkowski by the Informant. The Court held an evidentiary hearing to answer this fact-specific question. United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996) (holding that Federal Rule of Criminal Procedure 12 requires the Court to hold an evidentiary hearing on a defendant's motion if the claim is colorable and material facts are in dispute); United States v. Juarez, 454 F.3d 717, 720 (7th Cir. 2006). The question before the Court is whether the Informant's tips gave Trooper Todaro probable cause to stop Defendant's vehicle and search all components of the car including marked bags located in the trunk of the car. The Court answers this question in the affirmative.

The facts in this case indicate that there was probable cause to stop and search the vehicle. Under the automobile exception to the warrant requirement, law enforcement officers may seize and search a vehicle without a warrant if probable cause exists to believe that the vehicle contains contraband or evidence of a crime. United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) ("[T]he 'ready mobility' of automobiles permits their search based only on probable cause."). In this case, probable cause allegedly came from an Informant's tip that the Impala was being used to procure four ounces of crack cocaine and five pounds of marijuana and that, upon its return to Pennsylvania, it contained these drugs. In assessing whether Trooper

4

Todaro's suspicion of probable cause was based on sufficiently reliable facts, Agent Kierzkowski's knowledge about the Informant's tips is imputed to Trooper Todaro. United States v. Johnson, — F.3d —, 2010 WL 293046 *5 (3d Cir. Jan. 27, 2010) (citations omitted). The Third Circuit has identified several factors to help determine whether an informant's tip provides "sufficient indicia of reliability" under the totality of the circumstances to provide reasonable suspicion or probable cause for a search or a warrant. United States v. Torres, 534 F.3d 207, 211 (3d Cir. 2008) (holding that an anonymous tip by witness provided reasonable suspicion to justify a Terry stop). Those factors are:

> 1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation. (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated. (3) The content of the tip is not information that would be available to any observer. (4) The person providing the information has recently witnessed the alleged criminal activity. (5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility.

Id. 534 F.3d at 211. "No single factor is dispositive or even necessary to render an informant's tip reliable." Johnson, 2010 WL 293046 at *5.

To begin, the Informant in this case was known to DEA agents. He was not an anonymous tipster and would certainly be held responsible if his tips were incorrect because Agent Kierzkowski knew his identity. Moreover, though the precise tip at issue may not have been communicated face-to-face, the tip was not a one-time communication and it represented current, on-going illegal activity. See Johnson, 2010 WL 293046 at *6 (finding that a tip regarding ongoing criminal activity has enhanced reliability over one regarding past activity). Agent Kierzkowski had been working with the Informant, developing information on

5

Drummond's activities, for days at the least. This partnership included surveillance of Drummond and his interactions with the Informant, as well as attempted and actual recorded conversations between the Informant and Drummond. (Trans. 28.) Additionally, the content of the tip–information regarding the location, time, and amount of drugs to be purchased–was specific information not available to an outside observer. The Informant provided information that was only known because he was present with the Defendant and his co-conspirators at certain points in the drug transaction. Indeed, the Informant not only witnessed criminal activity, but successfully completed a controlled drug purchase from Drummond, who orchestrated Defendant and Thomas' drug purchase.[5] Finally, Agent Kierzkowski was able to independently corroborate the Informant's tip when the Informant provided information that the Impala was departing New Jersey, and the GPS tracking device on the Impala confirmed the car's movement. Thus, the Informant's accuracy and reliability were verified by Agent Kierzkowski and told to Trooper Todaro prior to the search. Accordingly, the totality of the circumstances demonstrate that probable cause existed to believe the Impala contained drugs. See Illinois v. Gates, 462 U.S. 213 (1983) (finding that a totality of the circumstances analysis should be used to determine whether an informant's tip provides probable cause to issue a warrant).

Once law enforcement officers have probable cause to search a vehicle, they have probable cause to search any container in the vehicle which is likely to contain the contraband suspected to be within the vehicle. United States v. Ross, 456 U.S. 798, 824 (1982) ("The scope

---

[5] Other circuits have held that controlled purchases significantly increase the reliability of an informant's tip. See, e.g., United States v. McKinney, 143 F.3d 325, 329 (7th Cir. 1998) ("Controlled buys add great weight to an informant's tip."); United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008) ("The reliable informant's tip and the controlled buy established probable cause.").

of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found."). In this case, the suspected contraband was drugs. It makes no difference whether a bag is locked, leather, or labeled; Trooper Todaro's probable cause to search the vehicle extends to any container within the vehicle that may contain drugs. Id. at 822 ("Even though [a distinction between containers] perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other, the central purpose of the Fourth Amendment forecloses such a distinction."). It is undisputed that Defendant's bag was located within the Impala, and that if probable cause existed to search the Impala, it also existed to search the bag within the vehicle.

For the above-stated reasons, the Court finds that the Government lawfully searched the Impala and Defendant's bag located within the trunk of the Impala. Accordingly, the motion to suppress will be denied. An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Criminal Action No. 1:09-cr-00159 |
| v. : | |
| : | **(Chief Judge Kane)** |
| **ORSON ADAMS,** : | |
|    Defendant : | |

## ORDER

**AND NOW**, this 4th day of February, 2010, upon consideration of Defendant's motion to suppress evidence (Doc. No. 112), **IT IS HEREBY ORDERED** that the motion is **DENIED.**

                                              S/ Yvette Kane
                                              Yvette Kane, Chief Judge
                                              United States District Court
                                              Middle District of Pennsylvania